UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL GONZALEZ, USMS #10141506,<br><br>                           Plaintiff,<br><br>vs.<br><br>GEO WESTERN DETENTION FACILITY; N. VAZQUEZ, GEO Facility Administrator; CARNEY, Associate Warden; T. HARTLEY, GEO Counselor,<br><br>                           Defendants. | Case No.: 3:24-cv-00257-WQH-AHG<br><br>**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b)**<br><br>[ECF No. 2] |

HAYES, Judge:

      Before the Court is a civil complaint filed pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), by Plaintiff Raul Gonzalez, a federal pretrial detainee at GEO's Western Region Detention Facility ("WRDF") in San Diego,[1] who is

---

[1] The Court takes judicial notice of Plaintiff's ongoing criminal proceedings in *United States v. Gonzalez*, S.D. Cal. Criminal Case No. 3:23-cr-02473-CAB-1. *See Tigueros v. Adams*, 658 F. 3d 983, 987 (9th Cir. 2011) (related proceedings, orders, and filings in other courts are subject to judicial notice); *see also United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

proceeding without counsel. (ECF No. 1.) Plaintiff claims WRDF, one of its administrators, a counselor, and an associate warden violated his constitutional rights by failing to provide access to his American Indian spiritual advisor. *Id.* at 2–3. He seeks $20 million in general and punitive damages but has not prepaid the filing fee required by 28 U.S.C. § 1914(a) to commence a civil action. *Id.* at 5. Instead, Plaintiff seeks leave to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). (ECF No. 2.)

For the reasons explained, the Court **GRANTS** Plaintiff leave to proceed IFP, but **DISMISSES** his Complaint *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) because it fails to state a claim upon which *Bivens* relief may be granted.

I.     MOTION TO PROCEED IFP

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee.[2] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to pay the entire fee at the time of filing only if the court grants the Plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *cf. Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023) ("[W]here [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed unless and until the fee[s] [a]re paid.").

"While the previous version of the IFP statute granted courts the authority to waive fees for any person 'unable to pay[,]' … the PLRA [Prison Litigation Reform Act] amended the IFP statute to include a carve-out for prisoners: under the current version of the IFP statute, 'if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.'" *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)). Section 1915(b) "provides a structured timeline for

---

[2] In addition to the $350 statutory fee, civil litigants filing suit are required to pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The administrative portion of the fee does not apply to persons granted leave to proceed IFP. *Id.*

collecting this fee." *Id.* (citing 28 U.S.C. § 1915(b)(1)–(2)).

To proceed IFP, prisoners must "submit[] an affidavit that includes a statement of all assets [they] possess[,]" as well as a "certified copy of the[ir] trust fund account statement (or institutional equivalent) for … the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(1), (2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). Using this financial information, the court "shall assess and when funds exist, collect, … an initial partial filing fee," which is "calculated based on 'the average monthly deposits to the prisoner's account' or 'the average monthly balance in the prisoner's account' over a 6-month term; the remainder of the fee is to be paid in 'monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)–(2)). Thus, while prisoners may qualify to proceed IFP without having to pay the statutory filing fee in one lump sum, they nevertheless remain obligated to pay the full amount due in monthly payments. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

In support of his IFP Motion, Plaintiff has submitted a copy of his WRDF Resident Account Summary, as well as a prison certificate authorized by a WRDF Case Management Coordinator (ECF No. 2 at 4, 6). *See* 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These documents show Plaintiff had no money deposited to his trust account from the time of his arrest to the time of filing, and no available funds to his credit. (ECF No. 2 at 4, 6.) Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP and declines to assess any initial filing fee because his trust account statements show he "has no means to pay it." *Bruce*, 577 U.S. 84–85. Instead, the Court **DIRECTS** the Facility Administrator at WRDF, to garnish and collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and to forward those fees to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(2).

/ / /

/ / /

## II. SCREENING

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a preliminary review pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion found frivolous, malicious, failing to state a claim, or seeking damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

Federal Rules of Civil Procedure 8(a) and 12(b)(6) require a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. A complaint fails to state a claim if it lacks a "cognizable legal theory" or "sufficient facts … to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings

liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### B. Factual Allegations and Claims

Plaintiff's Complaint names the WRDF, its Facility Administrator Vazquez, Associate Warden Carney, and Counselor Hartley as Defendants. (ECF No. 1 at 1–2.) He seeks damages against them pursuant to *Bivens* based on violations of his rights to due process, which the Court construes to arise under the Fifth Amendment, and his right to consult with his American Indian spiritual advisor, which the Court construes as a First Amendment free exercise of religion claim.[3] *Id.* at 1–5.

Specifically, Plaintiff alleges he arrived at WRDF on December 8, 2023, and embarked on a hunger strike for three days. *Id.* at 3. Plaintiff claims he is of Navajo and Omaha descent and agreed to cease his strike if given access to his "Grandfather (A.M.I.) Spiritual Advisor." *Id.* Plaintiff submitted Detainee Request Forms, and made this request several times to GEO Counselor T. Hartley, Associate Warden Carney, and Facility Administrator Vazquez, all to no avail. *Id.* He attaches copies of these grievances to his Complaint, including a letter in response from an unidentified WRDF official, dated January 18, 2024. *Id.* at 6–9. The letter reports that multiple attempts to locate an American Indian spiritual advisor were attempted but unsuccessful, and he was given the opportunity to provide additional contact information to WRDF's chaplain in order to assist in locating one. *Id.* at 7. Meanwhile, Plaintiff's request for Native American devotional literature was granted, and he was provided two books entitled 365 DAYS OF WALKING THE RED ROAD

---

[3] While courts have a duty to construe pro se pleadings and motions liberally, *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003), and a complaint "need not identify the statutory or constitutional source of the claim raised in order to survive … dismiss[al]," *Alvarez v. Hill*, 518 F.3d 1152, 1157–58 (9th Cir. 2008), Plaintiff must still present factual allegations sufficient to state a plausible claim for relief. *Hebbe*, 627 F.3d at 341–42.

and MEDITATION WITH NATIVE AMERICAN ELDERS. *Id.* at 7.

### C. Discussion

#### 1. *Bivens* Claims against WRDF

First, the Court finds Plaintiff may not bring a *Bivens* suit against the WRDF. "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Thus, even if Plaintiff could state plausible due process or free exercise claims for relief against individual WRDF officers Vazquez, Carney, or Hartley, the Court must dismiss all claims against WRDF pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) because WRDF is managed by the GEO Group, a private corporation operating under a contract with the federal government.[4] *Bivens* provides no implied right of action against WRDF itself. *Malesko*, 534 U.S. at 66–74 (holding that *Bivens* liability does not extend to a private corporation operating a facility under contract with the federal government); *see also Barrett v. GEO Grp., Inc.*, No. 21cv1603-CAB (JLB), 2021 WL 5741448, at *3 (S.D. Cal. Dec. 2, 2021) (noting GEO Group contract with USMS to operate WRDF and dismissing prisoner's *Bivens* action against GEO Group *sua sponte* for failing to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)).

#### 2. Viability of *Bivens* Claims against WRDF Officials

Second, the Court finds Plaintiff's due process and free exercise claims as alleged against Defendants Vazquez,[5] Carney, and Hartley also fail to state plausible claims for

---

[4] "The GEO Group (NYSE: GEO) ("GEO") has three direct contracts with the U.S. Marshals Service ("USMS"). One of these direct contracts involves the 770-bed Western Region Detention Facility in San Diego, California. GEO's Western Region Detention Facility contract with the USMS extends through September 30, 2027." *See* https://investors.geogroup.com/news-releases/news-release-details/geo-group-provides-update-us-marshals-service-contract-western (last viewed May 17, 2024).

[5] Because Plaintiff seeks to sue Vazquez in his official capacity only, *see* ECF No. 1 at 2, his claims fail regardless of whether an implied cause of action under *Bivens* exists. *See Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) ("A *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official

relief under *Bivens* and must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1).

"Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts." *DeVillier v. Texas*, 144 S. Ct. 938, 943 (2024) (citing *Egbert v. Boule*, 596 U.S. 482, 490–491 (2022)). "Instead, constitutional rights are generally invoked defensively in cases arising under other sources of law, or asserted offensively pursuant to an independent cause of action designed for that purpose[.]" *Id.*

Courts recognize only a narrow category of implied causes of action that may be brought against federal officials for alleged civil rights violations committed in their individual capacities.[6] "In *Bivens* […], the Court broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." *Hernández v. Mesa*, 589 U.S. 93, 99 (2020) (internal citations omitted). The Supreme Court has expanded this implied cause of action only twice, recognizing a *Bivens* remedy for a Fifth Amendment gender discrimination claim, *Davis v. Passman*, 442 U.S. 228, 230–31 (1979), and for an Eighth Amendment inadequate medical care claim raised by a federal prisoner's decedents. *Carlson v. Green*, 446 U.S. 14, 24–25 (1980).

---

capacity." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) (internal quotation marks, brackets, and citation omitted).

[6] As noted above, to the extent a *Bivens* remedy exists, Plaintiff's suit may only proceed against individual WRDF employees Vazquez, Carney, and Hartley. *See Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1104 (9th Cir. 2004). These individual WRDF officers are employed by the GEO Group which "operate[s] private prisons on behalf of the federal government," and which, among other responsibilities, requires them to "oversee[] and control[] the daily lives of the prisoners." *Davis v. Samuels*, 962 F.3d 105, 112 (3d Cir. 2020). Both the Ninth and Third Circuits have held the performance of that function "appears to be the exercise of a right having its source in federal authority, by those who "could in all fairness be regarded as ... federal actor[s]" under *Bivens*. *Id.* (citing *Brown v. Philip Morris Inc.*, 250 F.3d 789, 801 (3d Cir. 2001)); *see also Pollard v. The GEO Grp., Inc.*, 629 F.3d 843, 857–58 (9th Cir. 2010) (concluding under the "public function test" that "GEO employees act under color of federal law for purposes of *Bivens* liability"), *rev'd on other grounds sub nom.*, *Minneci v. Pollard*, 565 U.S. 118, 132 (2012).

/ / /

Since then, the Court has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017) (quoting *Malesko*, 534 U.S. at 68). "Rather than dispense with *Bivens*, the [Supreme] Court now emphasizes that recognizing a *Bivens* cause of action is 'a disfavored judicial activity.'" *Egbert*, 596 U.S. at 483 (quoting *Abbasi*, 582 U.S. at 121); *see also Hernández*, 589 U.S. at 101 ("We have stated that expansion of *Bivens* is 'a disfavored judicial activity,' and have gone so far as to observe that if 'the Court's three *Bivens* cases [had] been ... decided today,' it is doubtful that we would have reached the same result…." (quoting *Abbasi*, 582 U.S. at 134–35) (internal citations and quotation marks omitted) (alterations in original)).

      a.    *Plaintiff's Bivens Claims Arise in New Contexts*

While the Supreme Court has previously assumed a *Bivens* action against federal officials alleged to have violated the First Amendment's Free Exercise Clause might be available, *see, e.g.*, *Iqbal*, 556 U.S. at 675 (assuming without deciding that a First Amendment free exercise claim is actionable under *Bivens*), it has "never held that *Bivens* extends to First Amendment claims." *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012). In fact, in *Egbert*, the Court recently made clear that "there is no *Bivens* cause of action for [a] First Amendment retaliation claim." 596 U.S. at 498. The Court has yet to directly address whether *Bivens* extends to a First Amendment free exercise claim, however. *See Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) (noting that Supreme Court has never extended *Bivens* to free exercise of religion and declining to extend *Bivens* to Muslim inmate's free exercise claim); *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 n.6 (8th Cir. 2008) ("We have never found a *Bivens* action to extend to a Free Exercise claim, and it is doubtful we would do so."); *Ndandu v. Sasso*, No. 3:23CV00792-WQH-KSC, 2024 WL 85893, at *3 (S.D. Cal. Jan. 8, 2024) (noting that neither the Supreme Court nor the Ninth Circuit has extended *Bivens* to a First Amendment free exercise claim); *Oster v. Santa Ana Police Jail*, No. 8:23-cv-01263-DOC (SK), 2023 WL 8898589, at *1 (C.D. Cal. Aug. 2, 2023) ("[T]he Supreme Court has never extended the *Bivens* remedy to

religious free exercise claims under the First Amendment."); *Pies-Lonsdale v. Lemus*, No. 3:22-CV-0309-TWR-JLB, 2022 WL 1427146, at *4 (S.D. Cal. May 4, 2022) ("[N]either the Supreme Court nor the Ninth Circuit Court of Appeals has ever extended *Bivens* to free exercise claims."); *Barrett*, 2021 WL 5741448, at *4 (noting that in light of *Abbasi*, "[i]t appears unlikely that *Bivens* can be extended to reach Plaintiff's First Amendment ... free exercise claim[ ]").

"The only Fifth Amendment-based *Bivens* claim that the Supreme Court has recognized was the one in *Davis*, which 'concerned alleged sex discrimination on Capitol Hill.'" *Mays v. Smith*, 70 F.4th 198, 203 (4th Cir. 2023) (quoting *Hernández*, 140 S. Ct. at 744); *cert. denied*, 144 S. Ct. 1008 (2024)); *Davis*, 442 U.S. at 230. "[N]either the Supreme Court nor [the Ninth Circuit] ha[s] expanded *Bivens* in the context of a prisoner's ... Fifth Amendment procedural due process claims." *Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018); *see also Stanard v. Dy*, 88 F.4th 811, 818 (9th Cir. 2023) (Fifth Amendment claims other than "in the context of gender-based employment discrimination" are a new context for *Bivens*); *Hunt v. Matevousian*, 336 F. Supp. 3d 1159, 1169 (E.D. Cal. 2018) ("The Supreme Court has never recognized a *Bivens* remedy for a Fifth Amendment due process claim relating to the alleged failure of a prison official to provide due process."), *aff'd*, No. 18-17464, 2023 WL 8064536 (9th Cir. Nov. 21, 2023).

Thus, because Plaintiff seeks damages against WRDF officials Vazquez, Carney, and Hartley based on claims that they violated his rights to due process by "refus[ing] to return [his] grievances," and further deprived him of his right to free exercise of his religious beliefs by failing to locate a Native American spiritual advisor during the course of a self-imposed three-day hunger strike (*see* ECF No. 1 at 3), the Court finds his claims arise in new contexts because he seeks to extend a damages remedy to a category of claims and defendants that differ "in a meaningful way from previous *Bivens* cases." *Abbasi*, 582 U.S. at 139; *Egbert*, 596 U.S. at 492 (citing *Malesko*, 534 U.S. at 68). Therefore, a *Bivens* remedy is unavailable because, as discussed below, there are "'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and

benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Abbasi*, 582 U.S. at 136 (internal quotation marks omitted)); *Stanard*, 88 F.4th at 818.

### b. *Special Factors Counsel Hesitation*

In applying its special factors analysis to Plaintiff's free exercise and due process claims "[the] court faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 496 (emphasis original) (quoting *Abbasi*, 582 U.S. at 136)); *Stanard*, 88 F.4th at 816. "If there are alternative remedial structures in place, 'that alone,' like any other special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 596 U.S. at 493 (quoting *Abbasi*, 582 U.S. at 137). "'Alternative remedial structures' can take many forms, including administrative statutory, equitable, and state law remedies." *Vega*, 881 F.3d at 1154 (quoting *Abbasi*, 582 U.S. at 137); *Stanard*, 88 F.4th at 816. Thus, "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy[,] ... even if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy.'" *Egbert*, 596 U.S. at 498 (quoting *Bush v. Lucas*, 462 U.S. 367, 372 (1983)).

Here, alternative statutory and administrative remedial structures counsel hesitation in extending an implied *Bivens* remedy for Plaintiff's alleged free exercise and due process claims. First, Plaintiff admits he filed several grievances alerting WRDF officials of his request to consult with a Native American spiritual advisor. (*See* ECF No. 1 at 3, 4.) In fact, the gravamen of his due process claim is that Defendants "retained," "refused to return" and/or lost several of them. *Id.* Plaintiff further attaches to his Complaint a copy of a WRDF "Detainee Request Form" dated December 26, 2023, in which he asks to speak with his "American Indian Spiritual Advisor," as well as a WRDF staff response dated

January 18, 2024, explaining the "multiple attempts" Chaplaincy Services made to "find contact information related to [his] request." *Id.* at 6–7.[7]

These allegations and exhibits confirm WRDF has established an alternative remedial mechanism through which Plaintiff can, *and did*, seek administrative relief with respect to his needs. *See Malesko*, 534 U.S. at 74 (noting that federal inmate housed in private halfway house under contract with the Federal Bureau of Prisons had "full access to remedial mechanisms established by the BOP, including … grievances filed through the BOP's Administrative Remedy Program (ARP)," which provides "'a process through which inmates may seek formal review of an issue relating to any aspect of his/her own confinement.'") (quoting 28 C.F.R. § 542.10); *see also Vega*, 881 F.3d at 1154 (precluding a *Bivens* relief where the ARP provided an "adequate, and more appropriate, remedy to vindicate plaintiff's [First Amendment] right[] to access the courts and [Fifth Amendment] procedural due process" claims against employees of a private non-profit BOP re-entry program contractor). The fact that Plaintiff's did not receive the specific or immediate relief sought in his WRDF Detainee Request Form "makes no difference." *Chambers v. Herrerra*, 78 F.3d 1110, 1107 n.3 (9th Cir. 2023) ("That the alternative remedy existed at all is the factor [courts] consider under *Egbert*[.]") (citation omitted).

Second, religious liberty protections provided by Congress in the Religious Freedom Restoration Act ("RFRA") "strongly militate against creating a *Bivens* action for Free Exercise claims." *Mack*, 839 F.3d at 305; *Egbert*, 596 U.S. at 498; *accord Pies-Lonsdale*, 2022 WL 1427146, at *4; *Umar v. Jusino*, No. 5:22-00427 FWS (ADS), 2022 WL 18636043, at *3 (C.D. Cal. Dec. 8, 2022) (dismissing Muslim prisoner's free exercise claims *sua sponte* pursuant 28 U.S.C. § 1915A where extension of *Bivens* was not

---

[7] "Courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference" to be part of the pleading when determining whether the plaintiff has stated a claim upon which relief may be granted. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

1 warranted due to existence of RFRA as an "alternative remedy"), *report and*
2 *recommendation adopted*, 2023 WL 373170 (C.D. Cal. Jan. 23, 2023). "RFRA provides
3 [Plaintiff] with a comprehensive remedial scheme for violations of substantial burdens on
4 his religious exercise." *Mack*, 839 F.3d at 305; *Davis v. Samuels*, 962 F3d 105, 113 (3d
5 Cir. 2020) (finding no extension of *Bivens* warranted for inmate incarcerated in private
6 federal facility alleging denial of his right to marry due to "the potential availability of
7 alternative remedies" under RFRA); *see also Davis v. Wigen*, 82 F.4th 204, 213 (3d Cir.
8 2023) (finding that RFRA "applies to … GEO Defendants" because it "contracts with the
9 Bureau of Prisons to house low-security alien inmates"); *Gambino v. Cassano*, No.
10 CV170830NLHAMD, 2021 WL 1186794, at *4 (D. N.J. Mar. 30, 2021) ("[T]he
11 availability of relief under … RFRA … is a special factor counselling hesitation in
12 extending the *Bivens* remedy.").

13 For all these reasons, the Court concludes Plaintiff seeks to assert free exercise and
14 due process claims for relief that arise in new contexts. Because the "unforgiving" special
15 factors inquiry counsels hesitation in extending *Bivens* relief, his case may not proceed.
16 *Egbert*, 596 U.S. at 492; *Stanard*, 88 F.4th at 818.

17 **D.     Leave to Amend**

18 As discussed, the Court finds Plaintiff's Complaint fails to state a claim upon which
19 *Bivens* relief can be granted and that it must be dismissed *sua sponte* and in its entirety
20 pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii) & 1915A(b)(1). While the Ninth Circuit has
21 acknowledged that new *Bivens* claims are "dead on arrival," *Harper v. Nedd*, 71 F.4th
22 1181, 1187 (9th Cir. 2023), and any amended pleading Plaintiff may wish to file against
23 the individual Defendants based on alleged violations of either his due process or free
24 exercise rights "may ultimately suffer the same fate, 'mostly dead is slightly alive.'"
25 *Chambers*, 78 F.4th at 1108 (quoting PRINCESS BRIDE (20th Century Fox 1987)).

26 Therefore, having now provided Plaintiff with "notice of the deficiencies in his
27 complaint," it will grant him an opportunity to fix them, if he possibly can. *See Akhtar v.*
28 *Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261

(9th Cir. 1992)); *Chambers*, 78 F.4th at 1108 (remanding pro se litigant's *Bivens* action to district court to determine whether "more detailed factual allegations could cure the deficiencies in his complaint under *Egbert*.").

### III. CONCLUSION

Accordingly, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **DIRECTS** the Administrator of the WRDF, their designee, or any agency later having custody, to collect from Plaintiff's trust account the $350 filing fee owed in this case by garnishing monthly payments in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Facility Administrator, GEO Western Region Detention Facility, 220 West C Street, San Diego, California 92101.

4. **DISMISSES** Plaintiff's Complaint *sua sponte* and in its entirety based on his failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1).

5. **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended

pleading may be "considered waived if not repled").

If Plaintiff fails to file an Amended Complaint within 45 days, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b) and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated:  July 1, 2024

Hon. William Q. Hayes
United States District Court